## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

```
SHAWN L. ROBINSON,              |
            Plaintiff,          |
                                |
     vs.                        |     CA No. 12-319-L
                                |
ASHBEL T. WALL, II, DAVID       |
MCCAULEY, DR. MICHAEL FINE,     |
JOSEPH R. MARACCO, NURSE        |
JANE DOE, and LT. BOLTON,       |
            Defendants.         |
```

**MEMORANDUM AND ORDER**

Plaintiff Shawn L. Robinson, a Connecticut state prisoner who was transferred to and is currently incarcerated at the Adult Correctional Institutions (ACI) in Cranston, Rhode Island, has filed a *pro se* civil rights complaint in this Court in the above matter pursuant to 42 U.S.C. § 1983. He has also filed an Application to Proceed without Prepayment of Fees and Affidavit (Doc. #2) (Application) and a Motion for Service of Process (Doc. #3) (Motion for Service). Having screened the Complaint Doc. #1) as required by 28 U.S.C. §§ 1915(e)(2) and 1915A, the Court concludes that the Complaint fails to state a claim on which relief may be granted and must be dismissed.

I.   THE COMPLAINT

Plaintiff states that:

1.) On April 30, 2009, at approximately 1630 hours Plaintiff Shawn L. Robinson was forced to give blood for

>an HIV test after being transferred to the Intake Service Center in Cranston, RI by Connecticut DOC officials.
>
>2.) Nurse Jane Doe stuck Plaintiff in both arms to draw blood.
>
>3.) Plaintiff was denied to file a grievance about the procedure because it was medical[.]
>
>4.) Connecticut state prisoner William O. Pet[a]way filed an 1983 and the defendants settled and paid him for the forced HIV test.

Complaint at 3.  Plaintiff "want[s] to be compensated for being forced to give my blood for an HIV test as well as my pain and suffering like Connecticut state prisoner William O. Pet[a]way because I am a Connecticut state prisoner being held in Rhode Island ACI against my will."  Id. at 3-4.

II.   LAW

   A.   Screening under § 1915(e)(2) and § 1915A

In connection with proceedings *in forma pauperis*, 28 U.S.C. § 1915(e)(2) instructs a court to dismiss a case at any time if the court determines that the action, *inter alia*, fails to state a claim on which relief may be granted.  28 U.S.C. § 1915(e)(2).[1]

---

[1] Section 1915(e)(2) provides that:

(2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that--
(A) the allegation of poverty is untrue; or
(B) the action or appeal--
    (i) is frivolous or malicious;

2

Pursuant to 28 U.S.C. § 1915A, the Court is required to screen complaints filed by prisoners against a governmental entity, officer, or employee of such entity and dismiss the complaint, or any portion thereof, for reasons identical to those set forth in § 1915(e)(2). See 28 U.S.C. § 1915A.[2]

The legal standard for dismissing a complaint for failure to state a claim pursuant to §§ 1915(e)(2) and 1915A is identical to the standard used when ruling on a Rule 12(b)(6) motion. Chase v. Chafee, No. CA 11-586ML, 2011 WL 6826504, at *2 (D.R.I. Dec. 9, 2011). To state a claim on which relief may be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d

---

        (ii) fails to state a claim on which relief may be granted; or
        (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2).

[2] Similarly, § 1915A states in relevant part that:

**(a) Screening**.--The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
**(b) Grounds for dismissal**.--On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint--
    (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
    (2) seeks monetary relief from a defendant who is immune from such relief.

    ....

28 U.S.C. 28 U.S.C. § 1915A.

868 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)); see also Chase, 2011 WL 6826504, at *2.  In making this determination, the Court must accept Plaintiff's well-pleaded allegations as true, construe them in the light most favorable to him, and give him the benefit of all reasonable inferences.  See Greater Providence MRI Ltd. P'Ship v. Med. Imaging Network of S. New England, Inc., 32 F.Supp.2d 491, 493 (D.R.I. 1998).  Although the Court must view the pleadings of a *pro se* plaintiff liberally, Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Court need not credit bald assertions or unsupported conclusions, Iqbal, 566 U.S. at 678.

    B.   Legal Standard under § 1983

Section 1983 creates a remedy for violations of federal rights committed by persons acting under color of state law.  Sanchez v. Pereira-Castillo, 590 F.3d 31, 40 (1st Cir. 2009).  Section 1983 requires three elements for liability: deprivation of a federal right, a causal connection between the actor and the deprivation, and state action.  Id. at 41 (citing 42 U.S.C. § 1983).  Here, assuming that Defendants were acting under color of state law, as they are all employees of the Rhode Island Department of Corrections (RIDOC), Plaintiff's claims are reviewed to determine if they allege facts indicating that Defendants deprived him of a constitutional or federal statutory right.

III. DISCUSSION

4

The Court makes two observations at the outset. First, Plaintiff makes no allegations whatsoever against any named Defendant other than "Nurse Jane Doe." Accordingly, Defendants Ashbel T. Wall, II, Director of Corrections, David McCauley, Warden at Intake, Dr. Michael Fine, Medical Director, Joseph R. Maracco, and Lt. Bolton are DISMISSED.

Second, Plaintiff provides no case or statutory law in support of his claims. He simply relies on Petaway v. DiNitto, et al., C.A. No. 11-047-M, which involved the same issue and was filed in this Court on February 11, 2011. See Docket in C.A. No. 11-047-M (Petaway Docket). As will be discussed below, Plaintiff's reliance on Petaway is misplaced.

As Plaintiff notes, he was transferred to the ACI by Connecticut Department of Correction officials, Complaint at 3, pursuant to the New England Interstate Corrections Compact (Compact), R.I. Gen. Laws § 13-11-2.[3] Under Rhode Island law, any

---

[3] The "Purpose and Policy" of the New England Interstate Corrections Compact is reproduced below:

> The party states, desiring by common action to fully utilize and improve their institutional facilities and provide adequate programs for the confinement, treatment and rehabilitation of various types of offenders, declare that it is the policy of each of the party states to provide facilities and programs on a basis of cooperation with one another, serving the best interests of offenders and of society and effecting economies in capital expenditures and operational costs. The purpose of this compact is to provide for the mutual development and execution of programs of cooperation for the confinement, treatment and rehabilitation of offenders with the most economical use of human and material resources.

5

person committed to the ACI is required to be tested for HIV. R.I. Gen. Laws § 42-56-37(a).[4] No consent is required. Id.

In Petaway, the plaintiff argued that, as a Connecticut state prisoner, he had a right to refuse HIV testing under Connecticut law. See Petaway v. DiNitto, C.A. No. 11-047-M, slip. op. at 2 (D.R.I. June 14, 2012)(McConnell, J.). He relied on Connecticut Department of Correction Administrative Directive 8.11, Conn. Gen. Stat. § 19a-582, and a provision of the Compact. See id. Under Administrative Directive 8.11 and Connecticut General Statutes § 19a-582, consent is required before such testing, and Petaway contended that, despite his transfer to Rhode Island, he retained the right to refuse testing. See id.

The Court concluded that Petaway did not have a legal right not to be tested for HIV without his consent. See id. at 5. United States District Judge John J. McConnell, Jr., determined that Connecticut General Statutes § 19a-582 contained exceptions which made clear that inmates in facilities operated by the

---

R.I. Gen. Laws § 13-11-2, Art. I.

[4] Section 42-56-37 states, in relevant part:

(a) Every person who is committed to the adult correctional institutions to answer for any criminal offense, after conviction, is required to be tested for human immunodeficiency virus (HIV). No consent for this test is required from the person being tested, nor is this test subject to waiver. In addition, periodic testing for HIV, including testing at the time of release and when deemed appropriate by a physician, is required. No consent on the part of the person being tested is required.

R.I. Gen. Laws § 42-56-37(a).

Connecticut Department of Correction had no absolute statutory legal right to refuse HIV testing. Id. at 5-6 (citing Conn. Gen. Stat. 19a-582(d)[5]). Moreover, section 9 of Administrative Directive 8.11 contained a similar exception.[6] Id. at 6, 6 n.5.

---

[5] Connecticut General Statutes § 19a-582, which addresses the law requiring general consent for HIV-related testing, further states that:

> (d) The provisions of this section shall not apply to the performance of an HIV-related test:
>
> ....
>
> (6) In facilities operated by the Department of Correction if the facility physician determines that testing is needed for diagnostic purposes, to determine the need for treatment or medical care specific to an HIV-related illness, including prophylactic treatment of HIV infection to prevent further progression of disease, provided no reasonable alternative exists that will achieve the same goal;
>
> (7) In facilities operated by the Department of Correction if the facility physician and chief administrator of the facility determine that the behavior of the inmate poses a significant risk of transmission to another inmate or has resulted in a significant exposure of another inmate of the facility and no reasonable alternative exists that will achieve the same goal. No involuntary testing shall take place pursuant to subdivisions (6) and (7) of this subsection until reasonable effort has been made to secure informed consent. ...

Conn. Gen. Stat. § 19a-582(d).

[6]
> 9. Testing Without Informed Consent. Each involuntary HIV test shall require pre-test approval of the DOC Director of Clinical Services and the director of Health And Addiction services, in consultation with the Director of Programs and Treatment (Division). Involuntary HIV testing shall only be conducted after a reasonable effort has been made to secure voluntary consent.
>
> A.   Testing without informed consent may be conducted when:
>
>      ....
>
>      3.   the DOC Director of Clinical Services

7

Thus, Judge McConnell concluded that Petaway had no legal right to refuse testing which he retained after his transfer to the ACI. See id. at 6.  Because Petaway had no legal right to refuse HIV testing, there was no legal right which the RIDOC was bound to recognize under the Compact.[7]  See id.  The same is true in the instant matter.

Plaintiff's claim that in the Petaway case "the defendants settled and paid him for the forced HIV test," Complaint at 3, is undeserving of credit because there is no support for this contention other than Plaintiff's allegation.  The Petaway Docket reflects that the defendants' motion to dismiss was granted by the Court and that Petaway has appealed that decision to the Court of Appeals for the First Circuit.  See Petaway Docket.  This is the sort of bald assertion or unsupported conclusion which the Court need not consider.  Iqbal, 566 U.S. at 678-79.  Moreover, Plaintiff's claim that he "was denied to file a grievance about the

---

determines that testing is needed for diagnostic purposes, to determine the need for treatment or medical care specific to an HIV related illness, provided no reasonable alternative exists that will achieve the same goal.

State of Connecticut Department of Correction Administrative Directive 8.11.

[7] The provision of the Compact on which Petaway relied states: "The fact of confinement in a receiving state [Rhode Island] shall not deprive any inmate so confined of any legal rights which the inmate would have had if confined in an appropriate institution of the sending state [Connecticut]."  R.I. Gen. Laws § 13-11-2, Art. IV(e).

procedure because it was medical," Complaint at 3, is belied by Petaway's statement that he filed a grievance pursuant to RIDOC policy, see Petaway v. DiNitto, C.A. No. 11-047-M, complaint at 3.

Based on Judge McConnell's decision in Petaway, which this Court accepts, it is hereby decided that Plaintiff has not alleged a constitutional claim that is "plausible on its face." Iqbal, 556 U.S. at 678.  Therefore, his Complaint must be dismissed.

IV.  CONCLUSION

The Court concludes that Plaintiff has not alleged a claim on which relief may be granted.  Accordingly, Plaintiff's Complaint is DISMISSED in its entirety.  His Application to proceed *in forma pauperis* and Motion for Service are DENIED as moot.


SO  ORDERED:

/s/Ronald R. Lagueux
Ronald R. Lagueux
Senior United States District Judge

DATE: December 12  , 2012